H. J. McNEILL and JOHN McNEILL *vs.* FLORA RIDDLE.

1. When one in possession of a tract of land, conveys the same in trust for the payment of debts, and afterwards the said land is sold at execution sale, and bought for the benefit of the bargainor's wife, and the said bargainor remains in possession during his life time, and the wife continues the same to the bringing of an action of ejectment; *Held*, that such possession is not adverse to the trustee, nor to the purchaser at the sale under said deed of trust.

2. Where a deed of trust is made to secure certain specified debts, one of which is tainted with usury, and a purchaser buys at the trustee's sale, for valuable consideration, and without notice of the illegality of the consideration of the said debt; *Held* that his title is not affected thereby.

3. If a deed contains a declaration of trust in favor of several creditors, and one of the debts secured is feigned or usurious, and there be no combination between the creditors, to whom the true debts are due, and the grantor or person for whose benefit the feigned debt is inserted, there can be no reason why the declaration of trust in favor of the true debts may not stand, and the feigned debt be treated as a nullity.

*Shober* v. *Hauser,* 4 D. & B. 91. *Brannock v. Brannock.* 10 Ire. 428, cited and commented on by Boyden, J.

This was an action of ejectment, tried before Buxton, J., at Fall Term 1871, of Moore Superior Court.

The declaration in ejectment was served on James Riddle, (the husband of the defendant) who was in possession, Aug. 6th, 1861.

At Fall Term 1861, one Tyson was by leave of the Court permitted to come in and defend as landlord of Riddle.

At Fall Term 1870, by consent of plaintiff and by leave of the Court, Flora Riddle came into Court, and was made party defendant in the place of Tyson.

James Riddle, husband of the defendant, did not enter an appearance to the action.

The lessors of the plaintiff claimed title under James Riddle, who executed a deed in trust, dated 18th December, 1858, for the land upon which he was living, to James Cole, trustee, to secure certain debts mentioned in the trust; this deed covered the whole tract owned and occupied by James Riddle.

In February, 1861, the trustee offered the land for sale in two pieces or parcels; one of the parcels was bid off by Joseph Monger, who complied with the terms of the sale; the other piece was bid off by a person who failed to comply with the terms of the sale, and there was a resale of this last piece on the 9th day of May, 1861, at which sale one McNeill became the last and highest bidder for $250; at his request the deed was made to the lessors of the plaintiff. James Riddle continued in possession until his death in 1862.

The defendant's title is as follows: on the 3rd day of January, 1861, W. D. Tyson obtained a justice's judgment against James Riddle for $100: on the 22d of January, 1871, he had an execution levied on the whole of the tract of land upon which Riddle was living: the levy was returned to the County Court, and at January Term 1871, an order was made affirming the justice's judgment, &c.; a *venire* was issued, and the land was sold at April Term 1861, and purchased for the benefit of the defendant, who obtained a sheriff's deed, dated

April 26th, 1864, covering all the land which her husband, James Riddle, had conveyed in trust to Cole.

The defendant resided with her husband on the land, and continued in possession up to the bringing of this action.

It was proved by the Sheriff that when he sold the land in 1861, it was bid off by one Dowd for W. D. Tyson, and that at the request of Tyson, he made the deed to the defendant.

He further stated, that at the second sale by the trustee, in May, 1861, the sale was forbidden by Dowd for Tyson. Upon this evidence the defendant moved to non-suit, upon the ground that the defendant was in possession at the time of the sale to the lessors of the plaintiff, and at the date of their deed, May 9th, 1861, from Cole, the trustee.

His Honor refused to non-suit and defendant excepted.

Defendant introduced several witnesses for the purpose of showing that one of the notes secured in the trust, was feigned and usurious, to-wit: a note given to one Seawell, an officer who had executions in his hand against Riddle, and also evidence tending to show that the trustee knew of the illegal consideration of this note. There were other debts named in the trust, which were not tainted in any way.

The defendant asked His Honor to charge the jury, that if the note given to Seawell was illegal and usurious, it vitiated the deed, and rendered it void against creditors. His Honor declined so to charge, but told the jury, that while the agreement between Riddle and Seawell was highly improper, Seawell being a public officer, yet if the lessors of the plaintiff were *bona fide* purchasers for valuable consideration, and bought without notice of the illegality of the note to Seawell, or of any unlawful agreement between the officer Seawell, and Riddle, then although that agreement was unlawful and known to the trustee, yet plaintiffs acquired a good title by their purchase.

His Honor also refused to charge " that if the defendant was in adverse possession of the land at the time the lessors

of the plaintiff took their deed, plaintiffs could not recover;" deeming that principle inapplicable to the case. The other facts of the case are set out in the opinion of the Court.

*No Counsel* for the plaintiffs.
*B. & T. C. Fuller* for the defendant.

BOYDEN, J. In this case two objections are made to the recovery of the plaintiffs.

1. That the deed of the plaintiffs made by the trustee Cole, was made while the wife of the bargainor in the deed of trust was in actual possession, claiming adversely to all the world.

The bargainor in the deed of trust continued in possession of the land until his death, after the commencement of this action, and this raises the question, whether the possession of a bargainor in a deed of trust or that of his widow, after his death, as against the trustee or the purchaser at a sale under the trust, can be set up as adverse, and thereby defeat the operation of the deed, made by the trustee to the purchaser. As to its being the general rule, that such possession is not to be deemed adverse, is too well settled to require the citation of authorities. But in this case it is said, that as the wife before the death of her husband had bid off the land in controversy, under a sale by the sheriff, and taken a deed for the same, that this rendered his possession adverse without ever having surrendered the possession.

How could this purchase and possession be adverse to the trustee or to the purchaser at his sale. No authority was cited for such a position and we are aware of none.

2. But the main question in the case turned upon the validity of the deed of trust, and it was urged with earnestness, that the deed of trust was fraudulent and void, for the reason that one of the debts mentioned in the trust, to wit : the bond for $300 to Seawell the constable, was usurious, for the reason that the original debt for which this bond was given was but $225,

and that $75 had been added to this debt under the following circumstances ; to wit : the constable Seawell had in his hands for collection, claims of different creditors of Riddle the bargainor in the trust, and had obtained judgment thereon, and had levied upon the land of Riddle, and that he agreed to release the said levies, and to include their claims in the deed of trust with the other creditors of Riddle, by his agreeing to give the constable $75, which sum was included in the bond for $300. And that the bond for the $300 having been given as above stated, was not only usurious but extortionate, and that it rendered the deed of trust absolutely void, although it was made to secure numerous other honest debts which had no connection with the bond for $300, to the constable Seawell, and His Honor was asked so to instruct the jury, which instruction His Honor declined to give, but stated to the jury, that if the lessors of the plaintiff were *bona fide* purchasers for valuable consideration, and bought without knowledge of the agreement between Seawell and Riddle, then although that agreement was unlawful and was known to James N. Cole the trustee, yet the lessors of the plaintiff, acquired a good title by their purchase and deed. Rev. Code, ch. 50, sec. 5.

It is true that in the case of *Shober* v. *Hauser*, 4 D. & B. 91, this Court did decide that the deed of trust being tainted with usury was absolutely void, and that no estate passed thereby. But in that case there was but a single debt, and consequently a deed made to a purchaser at a sale by the trustee, would pass no title, even to a *bona fide* purchaser, without notice. This decision was made in 1838. The Act of 1842, Rev. Code, ch. 50, sec. 5, referred to by his Honor below, changed the law as to purchasers without notice. In this case the sale was without notice to the purchasers, the lessors of the plaintiff, either of the alleged usury, or other unlawful consideration. In the case of *Brannock* v. *Brannock*, 10 Ire. 428, decided in 1846, there were, as in our case, several debts due to different persons, some of which were not tainted with

usury, and which were in no wise connected with those that were.

The present Chief Justice in delivering the opinion of the Court in that case says : " The operation of the deed was to pass the legal estate, with a separate declaration of trust, for each of the debts therein enumerated. There can be no reason why the declaration of trust in reference to one debt, may not stand, and a declaration of trust in reference to another be held void. So if a deed contains a declaration of trust, in favor of several debts, one of which is feigned, and there be no connection or combination between the creditors, to whom the true debts are due, and the grantor or person for whose benefit the feigned debt is inserted, there can be no reason why the declaration of trust, in favor of the true debts may not stand, and the feigned debt treated as nullity." In our case the trust included all the creditors of the bargainor, including that for which the land was sold by the sheriff and purchased by the defendant.

So it will be seen that the case of *Brannock* v. *Brannock* fully sanctions the charge of his Honor without reference to the Act of 1842.

There is no error. This will be certified.

Per Curiam.                                   Judgment affirmed.